## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| GREGORY ALAN APPLEGATE, | ) | CASE NO. 05-67759 |
| | ) | |
| Debtor. | ) | ADV. NO. 07-6217 |
| _____ | ) | |
| ANTHONY J. DEGIROLAMO, | ) | JUDGE RUSS KENDIG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OF OPINION** |
| | ) | |
| TRICIA K. APPLEGATE, | ) | |
| | ) | |
| Defendant. | ) | |

Now before the Court is the Motion to Abstain, filed September 19, 2008 by Defendant Tricia K. Applegate ("Defendant"), seeking to have this Court abstain from exercising jurisdiction over this controversy. Plaintiff Anthony J. DeGirolamo ("Plaintiff"), the Chapter 7 trustee in this case, filed his response on October 6, 2008. Defendant filed an untimely reply on November 12, 2008. For the reasons set forth below, the Court denies Defendant's motion.

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. 157(b)(2)(F) and (H). The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2001, Debtor Gregory Alan Applegate ("Debtor") began operating a Ponzi scheme. Debtor enticed investors with oral guarantees of tax-free returns if they would invest in a hedge fund operated through his company, Applegate Investments. Debtor claimed that he would take any surplus above the guaranteed rate of return on the securities in which he proposed to invest as his fee, and that if returns fell below that guaranteed rate, he would make them up out of his own pocket. Debtor did not invest any of his investors' money in the securities; instead, he paid prior investors with the funds received from new investors. He also diverted considerable sums to his own purposes.

The Ponzi scheme began to unravel in August of 2005, when an investor's financial advisor examined one of the false monthly statements Applegate produced for his clients.

The advisor discovered that the dividends and share prices on the statement did not match the actual market prices for the securities putatively held by Debtor's hedge fund. As more and more facts began to come to light, Applegate voluntarily went to the Ashland Police Department and the FBI and provided them with a written statement admitting that he had run a Ponzi scheme and knew that it was an illegal investment practice. On June 7, 2006, Applegate began a five-year prison sentence.

On October 11, 2005, creditors commenced an involuntary Chapter 7 filing against Debtor. Defendant was the wife of Debtor at that time, but had already filed a divorce action in the Ashland County Court of Common Pleas, Domestic Relations Division (the "domestic relations court"). That action, Case No. 05-DIV-237, had been filed September 21, 2005, but was stayed by the automatic stay when this involuntary bankruptcy was filed. Defendant moved for relief from the automatic stay on April 13, 2007 to proceed with the divorce action in the domestic relations court. This Court granted relief from the stay in an order entered July 18, 2007. However, in that order, the Court provided that

> the State Court shall not determine the division of property that is property of the estate (as such term is defined at 11 U.S.C. § 541) or issue any order purporting to transfer or obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

Relief from stay was granted for the purposes of dissolution, establishment of domestic support obligations, and establishment of child custody and visitation rights.

On November 16, 2007, Plaintiff filed the instant adversary proceeding under 11 U.S.C. §§ 547 and 548 and O.R.C. §§ 1336.04 and 1336.05, alleging that numerous transfers from Debtor's accounts to Defendant's were either preferential or fraudulent. These transfers included her annual salary of $30,000.00 paid through the Ashland Community Arts Center from 2001 to 2005, $50,000 from a retirement account, and $11,000 from an IRA and stocks purchased for Chadwick and Connor Applegate. In total, the trustee seeks relief of at least $200,000.00 against Defendant.

On December 27, 2007, Defendant filed an answer and counterclaim, denying the allegations of Plaintiff's complaint, asserting setoff rights against Plaintiff, and claiming that Plaintiff was in possession of property that is rightfully Defendant's personal property. This property includes part of the proceeds from the sale of real and personal property jointly owned by Debtor and Defendant, as well as funds of an unknown amount in bank accounts now in the trustee's possession. On March 10, 2008, Defendant amended her counterclaim to add a demand for an accounting of the latter accounts.

On January 16, 2008, Plaintiff filed his answer to Defendant's counterclaims, denying the relevant substantive allegations and asserting a number of affirmative defense. *Inter alia*, Plaintiff asserts that Defendant had knowledge that Debtor was perpetrating a Ponzi scheme and that she was the beneficiary of the illicitly obtained funds from that scheme, and also that all of the disputed assets are property of the bankruptcy estate and therefore subject to distribution only as permitted by the Bankruptcy Code. On May 16, 2008, in response to Defendant's amendment of her counterclaim, Plaintiff amended his answer to the counterclaim admitting that he had issued subpoenas to the financial institutions referenced in Defendant's amended counterclaim, and had received information in response, but

otherwise denying all new allegations in the amended counterclaim. Plaintiff also reiterated the same list of affirmative defenses he raised in his original answer.

On April 14, 2008, the parties submitted a joint motion for referral to mediation. The Court granted this motion on May 13, 2008. On June 9, 2008, Richard Baumgart was designated as the mediator. The mediation conference was held on August 1, 2008; Baumgart filed his report to the ADR administrator on August 14, 2008. The mediation was unsuccessful. Paragraphs 2 and 3 of Baumgart's report left little hope for resolution through further ADR efforts:

> 2. Reportable agreements and/or stipulations consented to by the parties: No settlement was reached. One side has unreasonable expectations.

> 3. Recommendations as to future ADR processing that might assist in resolving the dispute: none.

(Notice of ADR Administrator 1.) The case was thus returned to the court at that time.

On September 19, 2008, Defendant filed the instant Motion to Abstain. Defendant requests that the Court abstain from exercising jurisdiction over this dispute, deferring instead to the domestic relations court determine what is personal property of Defendant's. Defendant alleges that Plaintiff intends to use the Bankruptcy Code "as a weapon in what is properly a marital dispute." (Mot. to Abstain 2.) She claims that she "is not making a claim against estate property: she desires to regain her property that was seized by the plaintiff." Id.

Plaintiff filed an objection to Defendant's Motion to Abstain on October 6, 2008. Plaintiff alleges that Defendant is simply forum-shopping, that Defendant's motion is untimely, that she had already admitted that the Court had jurisdiction over this adversary, and that her motion fails to satisfy the requirements for mandatory abstention under the Bankruptcy Code. In addition, plaintiff's objection asks this Court to impose a constructive trust containing some or all of the marital assets before allowing the domestic relations court to proceed.

## LEGAL ANALYSIS

### I. Mandatory Abstention

Mandatory abstention in bankruptcy proceedings is governed by 28 U.S.C. § 1334(c)(2), which provides in full:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

The Sixth Circuit has interpreted this provision to mean that

> [f]or mandatory abstention to apply, a proceeding must: (1) be based on a state law claim or cause of action; (2) lack a federal jurisdictional basis absent the bankruptcy; (3) be commenced in a state forum of appropriate jurisdiction; (4) be capable of timely adjudication; and (5) be a non-core proceeding.

Lowenbraun v. Canary et al. (In re Lowenbraun), 453 F.3d 314, 320 (6th Cir. 2006). Plaintiff specifically alleges that Defendant's motion to abstain fails the "timeliness" requirement of § 1334(a)(2), and the Court also interprets Plaintiff as generally alleging that this is not a non-core proceeding as required by the fifth element of the Lowenbraun test. Plaintiff argues that "[a]ll of the causes of action in the complaint–recovery of preferences, turnover of property of the estate, and recovery of fraudulent conveyances–arise under title 11 of the United States Code ... and are specifically named in the list of core proceedings in 28 U.S.C. § 157(b)(2)." (Obj. to Mot. to Abstain 1-2.)

## A. Timeliness

The Code does not define what makes a motion "timely" within the meaning of 28 U.S.C. § 1334(c)(2). Plaintiff argues that the Court should look to the time limit for filing remand actions in 28 U.S.C. § 1447(c) (30 days) as a guideline for what is timely when filing a motion to abstain, which would have the similar effect of sending this controversy to state court. The Court is chary of using that period as a guideline. In In re Adelphia Commc'ns Corp. Sec. and Derivative Litig., 2005 WL 1404796 (S.D.N.Y. 2005), the court held that a motion for mandatory abstention could be brought more than 30 days after a case was removed to federal court, 28 U.S.C. § 1447(c), notwithstanding, because that provision only controlled the time limit for defects in removal procedure. (The Adelphia court denied the motion in that case on other grounds.) If the timeliness requirement of § 1447(c) (procedure after removal) does not even apply to motions for mandatory abstention in cases that *have* been removed, it strains credulity to find it applicable to such motions in cases that have *not* been removed.

The few other courts to have considered the issue directly have not read such a fixed length requirement into the timeliness requirement of § 1334(c)(2), though the body of caselaw is admittedly thin nationwide and all but nonexistent in the Sixth Circuit. Congress could easily have included a thirty-day restriction on motions to abstain under § 1334(c)(2), as it did with motions to remand under § 1447(c). Congress did not do so. The Court finds that this argues in favor of the slightly more flexible approach adopted in Novak v. Lorenz et al. (In re Novak), 116 B.R. 626 (Bankr. N.D. Ill 1990):

> While few courts have construed the word "timely" in § 1334(c)(2), this court held in construing similar language in § 157(d) that a party acts in a timely fashion when he or she moves as soon as possible after he or she should have learned the grounds for such a motion.

Id. at 628. The Novak court held that the defendant's motion to abstain filed in that case was untimely both because it was filed more than a year after the defendant filed its answer, and that it was at that time–the filing of the answer–that the defendant should have know that the

complaint in that case was not a core proceeding. With respect to motions to abstain under § 1334(c)(2), timeliness appears to turn on the stage of the litigation and its procedural history rather than on the mere ticking of the clock. This interpretation is also consistent with the holding of Acolyte Elec. Corp v. City of New York, 69 B.R. 155 (Bankr. E.D.N.Y. 1986), which held that a motion for mandatory abstention brought more than thirty days but less than two months after the commencement of the adversary proceeding was timely:

> Although the word "timely" is not defined in title 28, and although there is no definitive pronouncement as to who has the burden of establishing or negating timeliness, since there is no claim of prejudice or change in position between these dates, there is no reason to hold the motion untimely.

Id. at 179.

The facts of this case are substantially closer to those of Novak than to those of Acolyte. Plaintiff commenced this adversary on November 16, 2007. Defendant did not file her motion to abstain until September 19, 2008. Defendant states in her reply that Mr. Baumgart, the mediator, first raised the issue of abstention and suggested it. However, the very fact that this case had already been sent to mediation at that point–mediation that in this case was heading towards an unsatisfactory result for the movant–militates against finding that Defendant's motion was timely. Defendant did not move for abstention as soon as possible after he or she should have learned the grounds for such a motion; she moved only long after discovery had commenced and the case had been sent to and back from ADR without achieving a result sufficiently favorable to Defendant. In this case, unlike in Acolyte, it cannot fairly be said that there has been "no ... change in position between these dates," either. In her answer of December 27, 2007, Defendant admitted paragraphs 1-6 of the complaint. Paragraphs 1-6 of the complaint state, *inter alia*, that this adversary proceeding is a core proceeding. Since one element of the Lowenbrau test for whether mandatory abstention arises is that the proceeding in question be a non-core proceeding, Defendant has implicitly changed her position on this fundamental issue, discussed further in section I.B, infra.

For the above reasons, the Court holds that Defendant's motion was untimely, and that mandatory abstention under 28 U.S.C. § 1334(a)(2) is therefore unwarranted.

## B. Core vs. Non-Core Proceedings

Plaintiff's other counterargument is far simpler: mandatory abstention does not apply to core proceedings, and this is a core proceeding.[1] The Court agrees, and under the fifth element of the Lowenbraun test, a proceeding must be a non-core proceeding for mandatory abstention to arise. Lowenbraun at 320. Core proceedings are defined in 28 U.S.C. § 157(b)(2). Among these are "proceedings to determine, avoid, or recover preferences," 28

---

[1] In his initial statement of jurisdiction, Plaintiff alleges that this adversary is "related to" Debtor's case under title 11 (Compl. 2), which is the term of art for non-core proceedings. Compare 28 U.S.C. § 157(c)(1) ("related to") with 28 U.S.C. § 157(b)(1) ("arising under title 11, or arising in a case under title 11"). However, Plaintiff also specifically asserts that this is a core proceeding (Compl. 2), and argues in his brief that they "arise under" title 11. Plaintiff has made his meaning unmistakable.

U.S.C. § 157(b)(2)(F); "proceedings determine, avoid, or recover fraudulent conveyances," 28 U.S.C. § 157(b)(2)(H); and "orders to turn over property of the estate," 28 U.S.C. § 157(b)(2)(E). A core proceeding "either invokes a substantive right created by federal bankruptcy law or one which could not exist outside of bankruptcy." Lowenbraun at 320. This proceeding invokes substantive rights created by federal bankruptcy law, corresponding to the definitions of core proceedings in the above-cited subsections of 28 U.S.C. § 157(b)(2): 11 U.S.C. § 547 (preferences), 11 U.S.C. § 548 (fraudulent conveyances), and 11 U.S.C. § 542 (turnover). Plaintiff has also brought counts in his complaint under Ohio's fraudulent transfer statute; while these actions might exist outside of bankruptcy, there is no reason for presuming that a state domestic relations court is a more appropriate forum than a federal bankruptcy court for dealing with these state law fraudulent transfer actions, particularly when doing so elsewhere would be unnecessarily duplicative.

Therefore, separately and independently from the issue of the timeliness of Defendant's motion, the Court holds that this matter is a core proceeding, which is an independently sufficient reason to reject Defendant's argument for mandatory abstention.

## II. Permissive Abstention

Defendant also asks the court to find permissive abstention appropriate in the absence of the need for mandatory abstention. Permissive abstention is provided for in 28 U.S.C. § 1334 (c)(1):

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Since the permissive abstention explicitly includes "proceeding[s] arising under title 11 or arising in" title 11, the fact that this is a core proceeding is irrelevant here. In addition, nothing in 28 U.S.C. § 1334(c)(1) requires the timely motion of a party. Instead, courts look to a number of factors in determining whether permissive abstention under § 1334(c)(1) is appropriate:

> (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention;
> (2) the extent to which state law issues predominate over bankruptcy issues:
> (3) the difficulty or unsettled nature of the applicable law;
> (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court;
> (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;
> (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
> (7) the substance rather than the form of an asserted core proceeding;
> (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
> (9) the burden of the bankruptcy court's docket;

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial; and

(12) the presence in the proceeding of non-debtor parties.

Delphi Automotive Systems, LLC v. Segway, Inc., 519 F.Supp.2d 662, 670-71 (E.D. Mich. 2007). This is a multi-factor balancing test, not a rule in which every element must be satisfied (contra the five-part rule in Lowenbraun for mandatory abstention); not all factors need to weigh in favor of permissive abstention in order for it to be appropriate. In Delphi, the debtor-plaintiff sued Segway in Michigan state court for breach of contract, the defendant removed to the district court, and debtor-plaintiff moved for remand to state court. Permissive abstention was found to be appropriate because state law claims predominated over the bankruptcy issues, the state law claims were only indirectly related to the bankruptcy case, there was no independent basis for bankruptcy court jurisdiction other than 28 U.S.C. § 1334, the right to a jury trial would be preserved on remand, and the defendant was a non-debtor party.

By contrast, state law issues do not predominate over bankruptcy law issues in the instant case. At the outset, they would have, but the Court has already granted relief from stay to allow those issues that would have made this a predominantly state law case to be heard and adjudicated in the domestic relations court: dissolution, domestic support obligations, child custody, and visitation rights. None of these concern the bankruptcy court, but the property of the estate does. The only remaining state law claim–division of the marital estate–is not indirectly related to the bankruptcy proceeding; it is directly related to the bankruptcy proceeding, because it involves the determination of what is and is not property of the bankruptcy estate. In addition, there is no right to a jury trial in divorce cases under Ohio law. Ohio Civ. R. 75(C).

It is true that there is no independent basis for jurisdiction here outside of § 1334, and that Defendant here is a non-debtor party. Nevertheless, there are differences between the facts here and those in Delphi. While there is no independent basis for jurisdiction here and was not in Delphi, the case in Delphi was a non-core proceeding brought under the court's "related to" jurisdiction in 28 U.S.C. § 1334(b). Delphi at 670. The causes of action here make this a core proceeding, one "arising in" a case under title 11. This is closer to the heart of the court's § 1334(b) jurisdiction, which makes the fact that that is the sole basis of jurisdiction less convincing as an argument for permissive abstention than it would be if § 1334(b) were grasping this matter with nothing but the tips of its fingernails. This also falls under the sixth Delphi factor, "the degree of relatedness or remoteness of the proceeding to the main bankruptcy case." Delphi at 670. In addition, while Defendant here is a non-debtor party and Segway was a non-debtor defendant, here, too, the facts are nevertheless distinguishable: Defendant here is not the debtor but was at least an insider of the debtor. She was his wife. The defendant in Delphi was an arm's length third party.

Other Delphi factors also militate against abstaining from hearing the preferential transfer, fraudulent transfer, accounting, and turnover actions here. The feasibility of severing state law claims (division of the marital estate) from core bankruptcy matters (recovery of alleged preferential and fraudulent transfers from the debtor-husband to his wife) borders on the impossible. In addition, given the stage of this litigation, the Court cannot ignore the specter of forum-shopping. The Delphi court enumerated this factor as

"the likelihood that the commencement of the proceeding *in bankruptcy court* involves forum shopping by one of the parties," Delphi at 671 (emphasis added), but there is no reason to ignore the converse: the likelihood that the commencement of the proceeding in *state court* involved forum shopping by one of the parties. It is true that the divorce case was filed 20 days before the involuntary Chapter 7 proceeding was filed against her husband. However, after the bankruptcy was filed, Defendant waited until April 13, 2007 to move for relief from stay to proceed with her divorce. When this Court specifically retained jurisdiction to deal with estate property in its order granting relief from stay, Defendant did not appeal or move this Court to reconsider. Instead, she waited until September 19, 2008, after this adversary had been filed, had been referred to mediation, and had been returned to this Court by the ADR Administrator, to move for permissive abstention. This conduct strongly suggests that Defendant's approach has been to "test the waters" in federal court and then attempt to have matters moved to state court if matters in federal court do not proceed as she would prefer.

The above facts distinguish this case from those in the sole case cited by Defendant, White v. White (In re White), 851 F.2d 170 (6th Cir. 1998). In White, the plaintiff wife had sued her husband for divorce and won an order for temporary alimony payments of $800 per month, whereupon the defendant-husband responded by filing a voluntary case under Chapter 11. The plaintiff promptly moved for relief from stay. The bankruptcy court granted her motion, and the defendant appealed. The Sixth Circuit held that it was proper for a federal bankruptcy court to lift the automatic stay to permit the state law divorce case to proceed in state domestic relations court, including the division of the marital estate. However, in that case, the forum-shopping concerns trended in the opposite direction: the husband filed for bankruptcy protection after the divorce case did not proceed as he would have wished. In addition, the wife promptly filed for relief from stay after the bankruptcy proceeding commenced. The Sixth Circuit, in affirming the bankruptcy court's decision to lift the stay, cited concerns that "the Bankruptcy Code could otherwise be abused as a weapon in a marital dispute." Id. at 174. No such concerns exist here. Debtor is not using the Bankruptcy Code as a weapon; he is not and was not using it at all. This bankruptcy case was involuntarily filed against him.

White stands for the proposition that for a bankruptcy court to defer to a domestic relations court for determining the respective interests of the marital estate of a debtor and his non-debtor spouse is not an abuse of discretion. Id. at 174. It does not hold that such abstention is mandatory when other factors weigh strongly against it, as they did not in White and do here. The Court therefore holds that the weight of the Delphi factors weighs strongly against permissive abstention, and declines to abstain from exercising its jurisdiction over this adversary.

## III. Constructive Trust

Because the Court is not reconsidering or amending its prior order of July 18, 2007 and is therefore retaining its jurisdiction to determine property of the estate, the Court finds Plaintiff's counter-motion to impose a constructive trust at best premature. In addition, Plaintiff was unspecific about which assets he was moving to place in such a trust. The issue has not been adequately briefed and may never need to be. Therefore, the Court declines to consider Plaintiff's motion to impose a constructive trust at this time.

## IV. Conclusion

Neither mandatory abstention nor permissive abstention is warranted in this case. Mandatory abstention does not arise because this is a core proceeding based on the legal authority under which relief is sought, and by Defendant's own admission. In addition, her motion to have the Court abstain from exercising its subject matter jurisdiction over this controversy was filed only after ten months and the conclusion of an unfruitful ADR proceeding. Permissive abstention is unwarranted because the issues in Defendant's divorce that are predominantly state law have already been referred to the domestic relations court, there is no right to a jury trial, the proceeding is strongly related to the main bankruptcy case, severing the remaining state law claims from the bankruptcy law issues would be an exercise in futility, and the Court is concerned about the likelihood of forum shopping.

An order denying Defendant's motion to abstain will be entered concurrently with this opinion.

/s/ Russ Kendig

_____

RUSS KENDIG
U.S. BANKRUPTCY JUDGE

**Service List:**

James W. Ehrman
John P. Archer
Kohrman Jackson & Krantz PLL
One Cleveland Center 20th Floor
1375 East Ninth Street
Cleveland, OH 44114-1793

William C Fithian, III
111 N Main St
Mansfield, OH 44902

Anthony J. DeGirolamo
Courtyard Centre
Suite 625
116 Cleveland Avenue NW
Canton, OH 44702

Tricia K Applegate
453 Forestdale Avenue
Ashland, OH 44805