The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.





Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| GREGORY ALAN APPLEGATE, | ) | CASE NO. 05-67759 |
| | ) | |
| Debtor. | ) | ADV. NO. 07-6217 |
| | ) | |
| ANTHONY J. DEGIROLAMO, | ) | JUDGE RUSS KENDIG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT INTENDED FOR** |
| TRICIA K. APPLEGATE, | ) | **PUBLICATION)** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Now before the Court are four motions: (1) trustee-plaintiff Anthony J. DeGirolamo's ("Plaintiff") motion for partial summary judgment, filed on March 16, 2009; (2) Defendant Tricia K. Applegate's ("Defendant") motion for partial summary judgment, filed on April 15, 2009; (3) Plaintiff's motion to strike the Defendant's motion for partial summary judgment, filed April 24, 2009; and (4) Defendant's Motion for Leave to File a Reply in Accordance with LBR 9013-1(c), filed on May 2, 2009. The latter was granted, in part, on September 29, 20009 and Defendant permitted to respond to the motions to strike.

The court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and the

general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. 157(b)(2)(H). The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

## FACTUAL BACKGROUND

When the underlying bankruptcy case was filed, Defendant was the estranged wife of Debtor Gregory Alan Applegate ("Debtor") and was pursuing termination of the parties' marriage in the domestic relations division of the Ashland County Court of Common Pleas. Termination of the marriage has since occurred. Prior to the filing, Debtor was a licensed stock broker and operated a business known as Applegate Investments. Debtor was most recently associated with the brokerage firm Regis Securities; that relationship ended in or about 2005, shortly before the involuntary petition was filed.

As admitted by Defendant, it became known that Debtor engaged in illicit investment activities. Included among these activities was the representation to potential investors that he could invest money in a hedge fund with a guaranteed rate of return. Debtor did not invest the money in a hedge fund. Instead, the money was used for various other purposes, including, but not limited to, the payments of dividends, interest, and the return of principle to other investors. Debtor provided false statements to clients in order to cover his activities. To the extent any legitimate investment activity was occurring, insufficient profits were made to sustain the promised rates of return, forcing Debtor to use new investor money to continue the scheme. The scheme began to unravel when one of the investors permitted another financial advisor to review the statements and the advisor noted inaccuracies in the statement. Debtor was ultimately imprisoned.

An involuntary petition was filed against Debtor on October 11, 2005 and Plaintiff was appointed the chapter 7 trustee. On November 16, 2007, Plaintiff initiated this adversary proceeding seeking to recover alleged prepetition preferential and fraudulent transfers from Debtor to Defendant. Defendant denied Plaintiff's allegations and also asserted a counterclaim seeking recovery of her purported share of marital assets sold by Plaintiff in the liquidation of Debtor's assets.

One of the alleged fraudulent transfers is the subject of Plaintiff's present

2

motion for partial summary judgment. On or about September 12, 2005, Defendant negotiated a $50,000 check, identified as check number 5912544297. The check was an official check from Home Savings and, in the bottom left corner of the check, identified "Gregg Applegate" as the remitter. The memo line of the check contains the notation "MUTUAL FUNDS." Defendant does not dispute that she signed the check, nor does she deny that she holds the funds from the check.

Procedurally, the motions are before the Court under the following circumstances. Plaintiff filed a motion for partial summary judgment on March 16, 2009. Pursuant to a Court order dated January 14, 2009, dispositive motions were due on March 16, 2009. Thus, Plaintiff's motion was timely filed. The Court order did not specify a response time, thereby default to the response time provided in the local rules, LBR 9013-1 specifically, which allows ten days for responses. On April 15, 2009, nearly one month after motions were due and three weeks after the response deadline, Defendant filed a single pleading containing a response and a motion for partial summary judgment. This resulted in two more pleadings by Plaintiff. In the first pleading, Plaintiff filed a reply, but also sought to strike Defendant's response to his motion for partial summary judgment. In the second pleading, Plaintiff filed a response to Defendant's motion for partial summary judgment, but also file a motion to strike that same pleading. This round of pleadings was followed, on May 2, 2009, but Defendant's motion for leave to file a reply brief. On September 29, 2009, the Court permitted Defendant to file a memorandum opposing Plaintiff's motion to strike Defendant's April 15, 2009 dual pleading.

## LAW AND ANALYSIS

### I. Plaintiff's Motions to Strike

Because determination of the motions to strike and motion for leave will impact the pleadings before the Court, the Court will address these motions first. Plaintiff seeks to strike Defendant's motion for partial summary judgment and Defendant's response to Plaintiff's motion for summary judgment. Although Defendant filed a single pleading, Plaintiff treats each portion of the pleading independently, and has therefore filed two separate motions to strike. The Court will also follow this lead. First, the Court will consider the motion to strike the response to Plaintiff's motion for partial summary judgment. Plaintiff's main contention is that the document was untimely filed. Motions were due March 16, 2009 and Defendant's motion was filed on April 15, 2009. Defendant admits that the deadline was not properly calendared and that the pleading was late, but asks the Court for leniency, arguing that no prejudice has occurred and matters should be determined on their

3

merits.

Defendant's motion for partial summary judgment focuses on Defendant's counter-claim and not the preferential/fraudulent transfer issues prosecuted by Plaintiff. Additionally, the Court notes that Plaintiff is not seeking to deny Defendant's motion, but to strike it. By doing so, it would just eliminate the pleading as if it had not been filed, removing it from the Court's consideration on summary judgment. It would not result as an adjudication on the merits of the counter-claim. In light of these facts, the Court finds good cause exists to grant the motion to strike Defendant's motion for partial summary judgment. The Court does not feel Defendant should be rewarded for missing a deadline in order to advance her counter-claim. Defendant will not be foreclosed from pursuing the counter-claim, but cannot do it on the motion for summary judgment.

The second motion to strike addresses Defendant's response to Plaintiff's motion for summary judgment. If the court denies the motion, it could result in severe prejudice to Defendant. The response was only three weeks late and no action was taken by the Court, or Plaintiff, which outweighs the potential harm to Defendant in striking the response. Further, Plaintiff filed his reply with the motion to strike the response, so the matter is fully before the Court for consideration. For these reasons, the Court will deny the motion to strike the response.

## II.    Defendant's Leave to File a Reply

In light of the outcome on the motion to strike Defendant's motion for partial summary judgment, the Court will deny Defendant's request to file a reply brief. Since the Court allowed Defendant's motion for partial summary judgment to be stricken, there is no need for a reply. To the extent Defendant's motion for leave seeks to file a sur-reply to Plaintiff's motion for summary judgment, the Court denies the motion. The Court previously permitted Defendant leave to file a response to Plaintiff's motion to strike, so the motion was granted, in part, and will be denied for any remaining relief.

## III.   Plaintiff's Motion for Partial Summary Judgment

Plaintiff seeks summary judgment in his favor finding the following: (1) the $50,000 transfer to Defendant on or about September 12, 2005 was fraudulent, (2) Debtor operated a Ponzi scheme, and (3) Debtor was insolvent in the ninety days prior to the filing of the petition. The latter is easily established: Defendant raises no opposition. (Memo. Contra Pl.'s M. for Partial Summ. Judg., p. 3). Consequently,

4

the Court finds that Debtor was insolvent in the ninety days prior to the date the petition was filed.

In prosecuting his motion for summary judgment, Plaintiff relies on Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56 into bankruptcy practice. The rule provides, in part:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

In reviewing a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party. Adickes v. S.H.Kress & Co., 398 U.S. 144, 158-59 (1970). Summary judgment is not appropriate if a material dispute exists over the facts, "that is, if evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### A.  $50,000 transfer

Plaintiff alleges that he is entitled to summary judgment on Counts three, four, five, six and seven because the $50,000 transfer to Defendant was fraudulent as a matter of law. He argues that the transfer constituted an actual or constructive fraudulent transfer under 11 U.S.C. § 548 and/or Ohio Revised Code 1336.01 et seq., Ohio's Uniform Fraudulent Transfer Act ("UFTA"). Under the provision for actual fraud, 11 U.S.C. § 548(a)(1)(A), a trustee is permitted to avoid a transfer

> of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor

5

voluntarily or involuntarily--

> (A)    made such transfer or incurred such obli-
> gation with the actual intent to hinder,
> delay, or defraud any entity to which the
> debtor was or became, on or after the date
> that such transfer was made or such obligation
> was incurred, indebted.[1]

Defendant denies that the transfer was fraudulent, arguing that there was no transfer of funds from Debtor to her, and also maintains that the money was her share of proceeds recognized from real estate sales during her marriage to Debtor.

To succeed on his claim under section 548(a)(1)(A), Plaintiff must show "(1) that there was a transfer of an interest of the debtor in property; (2) that the transfer occurred within one year[2] prior to the date of the filing of the bankruptcy petition; and (3) that the transfer was made with the actual intent to hinder, defraud or delay." Slone v. Brennan (In re Fisher), 362 B.R. 871 (S.D. Ohio 2007) (citing In re Baker & Getty Fin. Svcs., Inc., 98 B.R. 300, 308 (Bankr. N.D. Ohio 1989), aff'd, 974 F.2d 712 (6th Cir. 1992)). The initial burden of proof is on Plaintiff to prove that a fraudulent transfer occurred, but if Plaintiff demonstrates that the transfer in question is marked with several badges of fraud, the burden can shift to a defendant. See Schilling v. Heavrin (In re Triple S. Restaurants, Inc.), 422 F.3d 405 (6th Cir. 2005).

Clearly, there was an official Home Savings check payable to Tricia Applegate in the amount of $50,000 issued on September 12, 2005. (Plaintiff's M. Partial Summ. J. Exhibit A). In the bottom left, the name of remitter is "Gregg Applegate" and the memo line contains the notation "Mutual Funds." Id. This establishes that a transfer of $50,000 occurred and Tricia Applegate was the recipient of the funds. However, it is not yet clear whether the transfer was of Debtor's interest in property.

According to Plaintiff, the $50,000 in funds transferred to Defendant were

---

[1]  This is the pre-BAPCPA code provision in effect at the time the underlying bankruptcy case was filed.

[2]  The Court notes that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 increased the time frame to two years for cases commenced more than one year after enactment of BAPCPA, but this case is a pre-BAPCPA case and governed by the one year time frame.

6

from an account in which investor funds from the alleged Ponzi scheme were commingled and thereby constitute a transfer of an interest of Debtor's property. Plaintiff asserts that approximately $1,500,000 million dollars of investor money was deposited into the Home Savings account and "Applegate [Debtor] used the Homes Saving Account to perpetuate the Ponzi scheme and transferred his interest in the Home Savings Account to Defendant pursuant to 11 U.S.C. § 548(a)(1)(A) and Section 1336.04(A)(1) of the UFTA." (Pl.'s M. Summ. J., p. 10). This is not entirely accurate. The account referred to in paragraph sixteen is not the account from which the $50,000 in funds for the bank check originated.

Greenwald's affidavit and the related documentation establish that Debtor did deposit approximately $1,500,000 into a Home Savings account identified as *5546. (Greenwald Aff. ¶ 16). However, Plaintiff did not establish that the $50,000 check came from this account. The evidence demonstrates that other Home Savings accounts existed, including a joint account for "Tricia K. Applegate or Gregg Applegate", account number *1047. (Greenwald Aff. SSG0323). It appears that the $50,000 bank check was issued from this joint account. Id.; *see also* Greenwald Aff. ¶ 18 (stating "The $50,000 disbursement to Tricia Applegate appears to come from the Home Savings *1047."). On September 12, 2005, disbursements totaling $100,000 were made from joint account *1047. (Greenwald Aff., SSG 0323). The notation indicates that of this $100,000, $50,000 went into yet another Home Savings account, *5508,[3] and $50,000 was issued in the form of a bank check. Id. The Court finds this is the $50,000 bank check payable to Defendant and subject of the motion for partial summary judgment; the money for the bank check was taken from joint account *1047 held by Debtor and Defendant, not Debtor's account *5546 as alleged in Plaintiff's motion. Consequently, questions of fact remain about the transfer to Defendant, including the composition of the funds in account *1047, making summary judgment under 11 U.S.C. § 548(a)(1)(A) and/or Ohio Revised Code 1336.04(A)(1) inappropriate. The Court denies the motion as it relates to Counts three and five.

Plaintiff also posits that the transfer was constructively fraudulent under 11 U.S.C. § 548(a)(1)(B). Under subsection (B) of the statute, a trustee can avoid a transfer of an interest in a debtor's property made within one year of the filing of the petition when debtor

---

[3] This account is listed under the name "Gregory A. Applegate." (Aff., SSG0455 - SSG0462). The detail does indicate a deposit of $50,000 was made on September 12, 2005. Id.

<table>
<tr><td>(i)</td><td colspan="2">received less than a reasonably equivalent value<br>in exchange for such transfer or obligation; and</td></tr>
<tr><td>(ii)</td><td>(I)</td><td>was insolvent on the date that such transfer<br>was made . . . or became insolvent as a result<br>of such transfer or obligation;</td></tr>
<tr><td></td><td>(II)</td><td>was engaged in business or a transaction, or<br>was about to engage in business or transaction,<br>for which any property remaining with the debtor<br>was unreasonably small capital; or</td></tr>
<tr><td></td><td>(III)</td><td>intended to incur, or believed that the debtor would<br>incur, debts that would be beyond the debtor's<br>ability to pay as such debts matured.</td></tr>
</table>

11 U.S.C. § 548(a)(1)(B). Plaintiff must establish, by a preponderance of the evidence, that Debtor received less than reasonably equivalent value for the transfer and that one of subsections (I), (II) or (III) is applicable. *See, e.g.,* Slone v. Lassiter (In re Grove-Merritt), 406 B.R. 778, 807-08 (Bankr. S.D. Ohio 2009) (citations omitted).

Once again, Plaintiff's motion fails to prove the predicate facts upon which a constructively fraudulent transfer can be found. The same problem that exists under 11 U.S.C. § 548(a)(1)(A) exists here: the Plaintiff has not proved that a transfer of Debtor's property was made to Defendant. Plaintiff's motion alleges that the funds were transferred from account *5546, one of Debtor's individual accounts. In actuality, it appears that the funds were drawn against a joint account, *1047, held by Debtor and Defendant. As a result, Plaintiff is not entitled to judgment as a matter of law in the face of outstanding questions of fact. The motion for summary judgment on Counts four, six and seven is denied.

Defendant alleges that the funds for the $50,000.00 transfer were proceeds from real estate sales which had been invested, but fails to fully substantiate her position. She established that she was party to several real estate sales during her marriage, but she provided no support for her claim that the proceeds were invested in Federated Kaufmann and American Funds accounts. While she states that the proceeds "were deposited into the American Funds account and the Federated Kaufmann account mentioned by Robert Greenwald in his Affidavit, page 7, paragraph 3," this statement of fact is not supported by Mr. Greenwald's affidavit, nor has Defendant offered any evidentiary support for this contention. The affidavit states that the proceeds from two sales were deposited into account *1047, *see* Greenwald Aff., p. 7, first paragraph, the second paragraph states that "we were unable to

8

conclusively trace the source of funds for the purchase of the securities." The third paragraph states that "[i]f, in fact, the $28,408 disbursement of funds . . . was invested in Federal Kaufman *1509 . . ., the investment would have been made with funds comingled (sic) with those of Applegate Investment investors." Id. at 7. The Greenwald affidavit goes on to directly oppose Defendant's statement: "

> we were unable to perform a complete tracing of the
> proceeds received from the sale of the four parcels
> of land from the Applegate farm. We have not
> been provided with documentation that would prove
> the proceeds from the sale of the Applegate farm
> parcel in 2002 was deposited into the Home Savings
> *1047 account or American Funds *7483 accounts.
> The Federated Kaufman *1509 account . . . received
> what appears to be funds comingled (sic) with those of
> Applegate Investments investors in 2003.

Id. The Court cannot find that Defendant's self-serving statements in her affidavit, and reliance on contrary information in the Greenwald affidavit, support her factual contentions.

### B.    The Alleged Ponzi Scheme

Plaintiff also seeks summary judgment concluding Debtor operated a Ponzi scheme. A Ponzi scheme has been described as "an investment scheme where investors are promised excessive returns on investments and where, typically, initial investors are paid the promised returns to attract additional investors." First Nat'l Bank of Barnesville (In re Baker & Getty Fin. Svcs., Inc.), 974 F.2d 712, 714 (6th Cir. 1992). Although the Sixth Circuit has not established elements required to prove the existence of a Ponzi scheme, other courts, including a bankruptcy court in the Southern District of Ohio, have adopted the following four elements:

> (1) deposits were made by investors; (2) the Debtor
> conducted little or no legitimate business operations
> as represented to investors; (3) the purported business
> operations of the Debtor produced little or no profit or
> earnings; and (4) the source of payments to investors
> was from cash infused by new investors.

Rieser v. Hayslip (In re Canyon Sys. Corp.), 343 B.R. 615, 630 (Bankr. S.D. Ohio

9

2006) (citing <u>Fisher v. Sellas (In re Lake States Commodities, Inc.)</u>, 272 B.R. 233, 242 (Bankr. N.D. Ill. 2002) (citing <u>Floyd v. Dunson (In re Ramirez Rodriguez</u>, 209 B.R. 424, 431 (Bankr. S.D. Tex. 1997)), *aff'd sub nom.* <u>Fisher v. Page</u>, 2002 WL 31749262 (N.D. Ill. Dec. 3, 2002)); <u>Forman v. Salzano (In re Norvergence, Inc.)</u>, 405 B.R. 709 (Bankr. D. N.J. 2009) (citation omitted).

This definition is similar to the working definition used in the accounting industry and relied on by Plaintiff's expert, Robert Greenwald. According to Mr. Greenwald, as set forth in paragraph 13 of his affidavit, the AICPA[4] description identifies the following characteristics of a Ponzi scheme:

> a.   The business activity depends on outside investor money.
>
> b.   The investor money is not used according to the stated purpose. Some of the investor money is used to pay the returns promised to earlier investors; and
>
> c.   The business enterprise lacks profits sufficient to provide the promised returns and, therefore, depends on an ever increasing supply of investor money.

The Court finds a significant overlap in the legal definitions of a Ponzi scheme adopted by various courts and that used by the AICPA. Thus, Mr. Greenwald's opinion that the elements of the AICPA definition of a Ponzi scheme are met carries weight in determining whether the legal definition is also met.

Plaintiff posits that if Debtor operated a Ponzi scheme, actual fraudulent intent is established *per se* for the purposes of 11 U.S.C. § 548(a)(1)(A). Courts supporting Plaintiff's position explain that the collapse of a Ponzi scheme is inevitable, so the Ponzi operator knows that there will be investors who will not be repaid, resulting in foreseeable harm to those investors. *See, e.g.* <u>In re Taubman</u>, 160 B.R. 964 (Bankr. S.D. Ohio 1993) (citing <u>Merrill v. Abbott (In re Independent Clearing House Co.</u>, 77 B.R. 843, 860 (D. Utah 1987)). This knowledge of the foreseeable harm is sufficient to establish intent. <u>Id.</u>, *also see* <u>Conroy v. Shott</u>, 363 F.2d 90 (6th Cir. 1966), *cert. denied*, 385 U.S. 969 (1966); <u>Rieser v. Hayslip (In re Canyon Sys. Corp.)</u>, 343 B.R.

---

[4] The AICPA is the American Institute of Certified Public Accountants.

615 (Bankr. S.D. Ohio 2006). Defendant has raised no counter to this premise, and the Court finds none readily forthcoming. Consequently, if Debtor operated a Ponzi scheme, the Court will conclude Debtor possessed an actual intent to hinder, delay or defraud investors in the Ponzi scheme for the purposes of section 548(a)(1)(A).

Plaintiff relies heavily on the affidavit of its expert accountant, Robert Greenwald, to establish the elements for the conclusion that Debtor operated a Ponzi scheme. Included among the documents reviewed by Mr. Greenwald, and provided by the Plaintiff as Exhibit E, is Debtor's confession to the Federal Bureau of Investigation ("FBI"). Defendant takes issue with the evidence provided by Plaintiff, stating it "does not support that there was a Ponzi scheme . . . [and] there is no evidence to suggest that the "Ponzi scheme" began in 2001." (Def's Memo. Contra, p. 3). Defendant then argues that the confession is inadmissible because "it is based upon inadmissible hearsay within hearsay within hearsay" and also that the affidavit is not admissible because it states that Mr. Greenwald is not rendering a legal conclusion, while Defendant asserts Plaintiff is using the affidavit for the purpose of establishing the legal conclusion that Debtor operated a Ponzi scheme.

Defendant's arguments are without merit. First, the Court finds that Mr. Greenwald qualifies as an expert witness whose specialized knowledge, developed through a combination of his experience and education, provides assistance to the court in understanding the nature of Debtor's business transactions. See Fed. R. Evid. 702. Defendant has not challenged Plaintiff's proffer of Mr. Greenwald as an expert. Rather, Defendant challenges some of the evidence upon which Mr. Greenwald relied, including the confession, as hearsay. Pursuant to Federal Rule of Evidence 703, experts are not prohibited from relying on inadmissible evidence in reaching an opinion:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.

Fed. R.Evid. 703; see also Taubman, 160 B.R. at 976-77. Consequently, the question is not whether the evidence is inadmissible, it is whether the evidence is of the type reasonably relied on in an expert in this field. Defendant did not provide any

11

argument on this issue. In light of the fact that Debtor's confession directly relates to his business activities, the Court finds the confession not only relevant, but material to the expert's testimony and therefore likely to qualify as a nature relied upon by other experts in Mr. Greenwald's field.

Additionally, Defendant completely ignores the multitude of documents upon which Mr. Greenwald's affidavit and opinion are based. Close to nine hundred pages of exhibits and documents are attached to his affidavit. In paragraph nine, he attests to review of documents from multiple sources, and Exhibit 2 to the affidavit identifies the documents reviewed. Even if it is inadmissible or not of the ilk generally used to form a basis for opinion in Mr. Greenwald's field of knowledge, the confession is not the sole basis for the Mr. Greenwald's opinion. While the Court agrees that Mr. Greenwald cannot ultimately render a legal conclusion, the Court views the affidavit to only express his opinion on what the legal conclusion should be: the same conclusion that Plaintiff urges the Court to render, specifically that Debtor operated a Ponzi scheme. Defendant has the opportunity to counter the opinion and proposed legal conclusion.

After review of the pleadings and evidence submitted, the Court finds that Plaintiff has proved that Debtor operated a Ponzi scheme. It is undeniable that Debtor received money to invest on behalf of clients. As stated by Mr. Greenwald in paragraph seven of the affidavit, there are approximately $2,850,000 in claims in this case from investors. Defendant herself states, in her Memorandum Contra Plaintiff's Motion for Partial Summary Judgment, "it is well documents that Gregory Applegate was doing something inappropriate with his investors' money." (Def.'s Memo. Contra, p. 3). Additionally, there is testimony from at least one investor, Margaret Riley, included in the exhibits attached to the affidavit.

Turning to the second element of a Ponzi scheme, Plaintiff must establish Debtor was principally engaged in nefarious business activities which were not those primarily identified to investors. Paragraph 17 of Mr. Greenwald's affidavit speaks to this element, and he states after

> review and analysis of the documents . . . including
> but not limited to the F.B.I. interviews, depositions,
> bank statements and other documents and information,
> my knowledge of the facts of the case, and my educa-
> tion, experience and training, it is my opinion, to a
> reasonable degree of certainty, that Mr. Applegate
> participated in a Ponzi scheme, as defined by the

12

AICPA, as the payments to investors appear to be
primarily from monies received (deposited) from
new and sometimes existing investors, rather
than from profits generated by legitimate business
operations. Further, the business enterprise lacked
profits sufficient to provide the promised returns and,
therefore, depended on an ever increasing supply of
investor money.

(Greenwald Aff., p. 5). This conclusion is supported in the record before the Court.
According to the deposition transcript of Margaret Riley, one of the investors, Debtor
promoted a hedge fund with earnings in the range of seven to eight percent.
(Greenwald Aff., SSG0048-SSG0049). Mrs. Riley believed that she was investing
in Van Kampen Investments when she wrote a check to Debtor's firm, Applegate
Investments. Id. Mr. Greenwald, and other evidence provided, establishes that
Debtor did not invest the monies with the companies as he advertised. Instead, much
of the money deposited was used to pay other investors, as stated by Debtor in his
confession and concluded by Mr. Greenwald. (Greenwald Aff. ¶ 15). As stated
previously, Defendant herself admits that Debtor's activities were not legitimate.
Taken as a whole, the Court cannot conclude but that Debtor was not using investors'
money in the manner he represented and was using funds in nefarious activities.

The third element necessary to prove the existence of a Ponzi scheme requires
proof that the activities represented by Debtor to investors lacked profit. Plaintiff
posited that Debtor's "cash receipts, disbursement and bank account information
. . . demonstrated that there is little or no evidence of capital gains and dividends
sufficient to support distribution to investors." (M. Partial Summ. Judg. at 8). In
paragraph seventeen of his affidavit, Mr. Greenwald specifically targets this element,
stating "the business lacked profits sufficient to provide the promised returns and,
therefore, depended on an ever increasing supply of investor money." (Greenwald
Aff. ¶ 17). Mr. Greenwald also cites Debtor's 341 testimony that at one point, the
income stream from business activities could not sustain the profits promised
investors. At times, the profits were not generated from investment activity, but were
created from the stream of income from other investors. The Court finds Plaintiff has
established the third element. In turn, this conclusion also supports the final element:
that new investor money was used to pay old investors capital and returns.
(Greenwald Aff. ¶ 16).

As a result, the Court finds that Plaintiff has demonstrated that Debtor's
activities constituted operation of a Ponzi scheme. Defendant simply failed to meet

13

her burden of proof in establishing the existence of genuine issues of material fact. Plaintiff presented his view of the material facts, supported by an affidavit of an expert which relied on various documents, including, but not limited to, bank statements, deposition transcripts, and Debtor's 341 meeting transcript and confession. The initial burden is on the movant to demonstrate a lack of genuine issue with regard to material facts. Once the Plaintiff meets this burden, Federal Rule of Civil Procedure 56(e)(2) requires, in pertinent part:

> When a motion for summary judgment is
> properly made and supported, an opposing
> party may not merely rely on allegations or
> denials in its own pleading; rather, its res-
> ponse must–by affidavits or as otherwise
> provided in this rule–set out specific facts
> showing a genuine issue for trial.

Fed. R. Civ. P. 56(e)(2). Here, Defendant did little but take her denial that a Ponzi scheme existed and create an affidavit. She did not challenge or discount the facts underlying the expert's conclusions, did not present any new facts or additional evidence, and did not offer any alternative explanations. In short, she failed to create any genuine issues of material fact as her burden required. Thus, the Court finds that Plaintiff is entitled to judgment as a matter of law that Debtor operated a Ponzi scheme.

An order effectuating this decision will be entered forthwith.

#     #     #

**Service List:**

James W. Ehrman
David S. Blocker
John P. Archer
Kohrman Jackson & Krantz PLL
1375 E. 9th St.
20th Floor
Cleveland, OH 44114

William C Fithian, III
111 N Main St
Mansfield, OH 44902

14